[No. 26462-1-I.   Division One.   August 31, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER LYNN, *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David Thiele, Deputy,* for respondent.

FORREST, J. — Lynn appeals his conviction for delivery of a controlled substance and attempted possession of a controlled substance, asserting that certain hearsay evidence was improperly admitted, that admission of that evidence violated his confrontation rights, and that there is not sufficient evidence to support the conviction. We affirm.

On December 14, 1989, two police officers encountered Clarence Mosby while engaged in an undercover narcotics operation. While giving Mosby a ride in their van the officers told Mosby they were interested in buying cocaine. Mosby informed them that he had a friend who would sell them cocaine and asked to use the cellular phone. Mosby made a call to what was later identified as Christopher Lynn's apartment in the Stonegate apartment complex. The officers overheard Mosby tell the person on the phone that "he wanted to get some stuff." Mosby then informed the officers that he could procure some cocaine. Mosby directed the officers to Stonegate apartments, where they waited in

the van as he entered the complex. Mosby returned with six rocks of cocaine.

Mosby agreed to meet with the officers again the next day. On December 15, 1989, the officers picked Mosby up at his apartment, which was not in the Stonegate complex, and Mosby again directed them to Stonegate. While the officers waited in the van Mosby entered the complex and returned with more cocaine.

During these transactions the officers told Mosby they would soon be interested in selling some cocaine that they were expecting. On January 3, 1990, one of the officers contacted Mosby telling him he wished to sell some cocaine. Mosby set up a meeting between the officer and "BB", from whom Mosby said the earlier cocaine had been obtained. The officer was to meet "BB", who would be driving a green Chrysler Newport, at a Burger King.

At the Burger King the officer saw an individual matching "BB" 's description arrive in the described car. The officer made eye contact with the person and pointed to the van. The person, Lynn, nodded and got in the van.

At this point, according to the officer's testimony, Lynn identified himself as "BB", admitted that he was the person from whom Mosby had obtained the other cocaine, and stated that he had lots of customers and could sell almost any amount of cocaine. The officer sold Lynn a package of aspartic acid, which resembles cocaine. Lynn was then arrested.

Lynn contends that Mosby, whom he had been friends with for 2 years, told him to meet "Randy" at the Burger King about a job. At the Burger King he was informed by "Randy" that Mosby had said that Lynn could sell some cocaine. Lynn informed the officer that Mosby had lied. According to Lynn, the officer showed him a stack of money to which Lynn replied, "Look, I thought this was about a job and I see that it's not and I'm out of here." Lynn denied giving the officer any money.

Lynn was charged with two counts of delivery of a controlled substance and one count of attempted possession of a controlled substance with intent to deliver. Mosby was also

charged and was being held pending trial at the time of Lynn's trial. Mosby was subsequently tried and convicted.

At Lynn's trial, the State made a pretrial motion to have Mosby's statements to the officers ruled admissible under ER 804(b)(3), statements against interest. The defense at no time argued that the State had failed to establish Mosby's unavailability. In fact, statements by defense counsel indicate that Mosby's unavailability was taken for granted. The defense argued that the State had not established Mosby's statements' reliability. The trial court ruled that there were adequate indicia of the reliability and admitted the statements.

The jury found Lynn guilty of all three charges. At the sentencing proceeding Lynn personally protested the fact that Mosby was not called as a witness, asserting that Mosby wanted to testify for him. No affidavit as to that fact has been presented.

## MANIFEST CONSTITUTIONAL ERROR

For the first time on appeal Lynn claims that the court erred in admitting Mosby's testimony because "unavailability" was not established. The State correctly points out that pursuant to RAP 2.5(a) an evidentiary error cannot be raised for the first time on appeal.[1] RAP 2.5(a)(3) does provide that a "manifest error affecting a constitutional right" may be raised for the first time on appeal. Lynn asserts that the State's failure to establish Mosby's unavailability violates the confrontation clauses of the United States and Washington Constitutions and therefore may be raised for the first time on appeal.

■ RAP 2.5(a)(3) does not provide that all asserted constitutional claims may be raised for the first time on appeal. Criminal law is so largely constitutionalized that most claimed errors can be phrased in constitutional terms. Suppression motions involve the Fourth Amendment. Admissions and confessions involve the Fifth and Sixth Amend-

---

[1]*State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986); ER 103(a)(1).

ments. Instructional errors may implicate constitutional due process. Hearsay involves Sixth Amendment confrontation rights. Elementary rules of construction require that the term "manifest" in RAP 2.5(a)(3) be given meaning. As the Washington Supreme Court stated in *State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988) (quoting Comment (a), RAP 2.5, 86 Wn.2d 1152 (1976)), "[t]he exception actually is a narrow one, affording review only of 'certain constitutional questions' ".

*State v. Scott, supra,* however, also states that the appellate court should, "satisfy itself that the error is truly of constitutional magnitude — that is what is meant by 'manifest' ". *Scott,* at 688. This language, standing alone, seems to suggest that *any* claim of constitutional error may be asserted for the first time on appeal. In view of the phrasing of RAP 2.5(a)(3) and the other quoted language from *Scott,* we feel this latter statement is more broadly stated than intended and that, indeed, it is only certain errors that may be asserted for the first time on appeal. If *Scott* means that when a claimed constitutional error is raised for the first time on appeal the court must always examine the error on its merits, it would be more straightforward to eliminate "manifest" from the rule.

Limiting the constitutional claims that may be raised for the first time on appeal places responsibility on trial counsel to properly prepare their cases and will reduce claims that are discovered solely for purposes of appeal. An expansive reading of manifest sends a message to trial counsel not to worry about overlooking constitutional claims, since such claims can always be asserted on appeal. Indeed, sophisticated defense counsel may deliberately avoid raising issues which have little or no significance to the jury verdict but may be a basis for a successful appeal.

The current case presents a paradigm of this scenario. Defense counsel, being aware of the unavailability requirement as a prerequisite for admission of statements against penal interest, knowing that as a practical matter Mosby was unavailable, could very logically argue that reliability was

not established but deliberately not argue the unavailability requirement. Thus, he would save an issue for appeal that would be quickly resolved if presented to the trial court.[2]

Prohibiting *all* constitutional errors from being presented for the first time on appeal would denigrate our constitutional protections and result in unjust imprisonment. On the other hand, permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts. A judicious application of the "manifest" standard permits a reasonable method of balancing these competing values.[3] Thus, it is important that "manifest" be a meaningful and operational screening device if we are to preserve the integrity of the trial and reduce unnecessary appeals.

In *State v. Hieb*,[4] the Supreme Court held that an issue as to the admission of hearsay statements as excited utterances and present sense impressions without a showing of unavailability could be raised for the first time on appeal.[5] Rather than addressing the issue of whether admission of the statements actually constituted an error, the court engaged in a

---

[2]We have absolutely no reason to believe trial counsel did so in this case and do not want any such inference to be made.

[3]For example, the rule set forth in *State v. Leach*, 113 Wn.2d 679, 689, 691, 782 P.2d 552 (1989) holds that failure to charge every element of the crime, both statutory and common law, can be raised for the first time on appeal. The application of this rule resulted in the dismissal of convictions for purely formal reasons having no impact on the truth-finding function of the trial. In an effort to reduce such undesirable results, the Supreme Court in *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991) adopted the broadest possible test for sufficiency of an information: whether the element can be "fairly implied from language within the charging document." *Kjorsvik*, at 104. By analogy, we believe that "manifest" should be interpreted so as to avoid routine resort to harmless error in the case of purely formal and obscure claims of constitutional error. Such claims simply do not constitute the narrow class of cases that merit review of an alleged error for the first time on appeal.

[4]107 Wn.2d 97, 727 P.2d 239 (1986).

[5]*Hieb*, at 108.

harmless error analysis and affirmed the conviction.[6] A superficial reading of *Hieb* might suggest that the proper analysis under *Scott* is a 2-step process: (1) the defendant need only cite to an alleged error that arguably implicates constitutional rights, and (2) the burden of proof shifts to the State to establish that any reasonable jury would have found guilt beyond a reasonable doubt in absence of the alleged error. However, the *Hieb* court did not attempt to analyze the meaning of RAP 2.5. In view of the specific language of the rule and the language in *Scott* that the rule represents a narrow exception, we do not think *Hieb* should be read so broadly.

■ ■ In reviewing RAP 2.5 and *Scott*, we conclude that the proper approach in analyzing alleged constitutional error raised for the first time on appeal involves four steps. First, the reviewing court must make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. Third, if the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then, and only then, the court undertakes a harmless error analysis.

Recognizing that the issue presented here suggests a constitutional confrontation issue, we now proceed to the second step and examine whether it meets the "manifest" standard of RAP 2.5(a)(3). In normal usage, "manifest" means unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed.[7] "Affecting" means having an impact or impinging on, in short, to make a difference. A purely formalistic error is insufficient.

---

[6]*Hieb*, at 110-12.

[7]*See State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974) (defining "manifest injustice" pursuant to CrR 4.2).

The claim now made, that unavailability was not established, is not, in view of the facts, a manifest error affecting Lynn's constitutional rights. The witness in question was in jail awaiting trial as a codefendant on the charges here involved. If he had formally claimed his Fifth Amendment right, he would be legally unavailable as a matter of law.[8] It appears to us that, if not certain, it was extremely likely that Mosby would indeed claim his rights if called to the stand. Importantly, Lynn has submitted no affidavit from Mosby which would indicate otherwise. Clearly, the trial court and both trial counsel assumed unavailability. On this record we can only conclude that calling Mosby as a witness would have been a purely formalistic exercise.

Thus, the alleged error presented here is not evident, unmistakable or indisputable. Nor is there any evidence indicating that the alleged error may have in fact affected Lynn's right to confrontation. Rather, the alleged error appears to be purely abstract and theoretical. Lynn has failed to point to any practical consequences which resulted from the alleged error.

Had Lynn questioned Mosby's unavailability at trial the State clearly would have had the burden of establishing unavailability. However, it is not sufficient when raising a constitutional issue for the first time on appeal to merely identify a constitutional error and then require the State to prove it harmless beyond a reasonable doubt. The appellant must first make a showing how, in the context of the trial, the alleged error actually "affected" the defendant's rights. Some reasonable showing of a likelihood of actual prejudice is what makes a "manifest error affecting a constitutional right". RAP 2.5(a)(3). Lynn has failed to do so. Accordingly, we hold that the State's failure to establish unavailability in the case at bar did not constitute a manifest error affecting a constitutional right and, therefore, may not be raised for the first time on appeal.

*State v. Hieb*, 39 Wn. App. 273, 693 P.2d 145 (1984) does not require a different result. In *Hieb*, a 6-year-old witness's

---

[8]*State v. Whelchel*, 115 Wn.2d 708, 717, 801 P.2d 948 (1990).

hearsay statements were admitted. The witness was in every sense available. However, the State chose not to call her because of concern that she had been improperly influenced by her grandparents.[9] The defense did not raise the issue of unavailability at trial.[10] The court stated, "because unavailability of the declarant was a recognized factor in a constitutional confrontation clause claim, the Court of Appeals correctly allowed Hieb to raise it initially on appeal." *State v. Hieb*, 107 Wn.2d 97, 108, 727 P.2d 239 (1986). In *Hieb*, the admission of hearsay resulting from the State's deliberate choice not to call an apparently available witness plainly abridged the defendant's right to confrontation, and therefore impacted the truth-finding function of the trial.

We do not find *Hieb* controlling in view of the very different factual situation as to availability. We hold that in the case at bar the claimed error was not manifest and was not preserved for appeal.[11]

---

[9]*State v. Hieb*, 39 Wn. App. 273, 281, 693 P.2d 145 (1984), *rev'd*, 107 Wn.2d 97, 727 P.2d 239 (1986).

[10]*Hieb*, 107 Wn.2d at 104.

[11]We also note that in any event Mosby's statements to the officers were admissible as statements of a coconspirator under ER 801(d)(2)(v). In order for statements to be admissible under ER 801(d)(2)(v) the State must establish a prima facie case of conspiracy, not considering the statements themselves, and must establish that the statements were made in the course of and in furtherance of the conspiracy. *State v. St. Pierre*, 111 Wn.2d 105, 118-19, 759 P.2d 383 (1988). These requirements are fully met by the record before us. The State established (1) a telephone call to the defendant, (2) immediately thereafter securing cocaine from the apartment complex where the defendant lived, (3) a second visit the following day to the same complex where more cocaine is produced, (4) the act of the defendant in meeting the officer on January 3, and (5) the defendant's admission to the officer that he was the supplier of the cocaine. This evidence firmly establishes that Mosby was part of a conspiracy to distribute cocaine. Mosby's statements were plainly made during the course of the conspiracy and directly furthered the conspiracy.

Neither unavailability, reliability or corroboration need be shown for the admission of coconspirators' statements. *See Bourjaily v. United States*, 483 U.S. 171, 182, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987); *St. Pierre*, at 118. In *United States v. Inadi*, 475 U.S. 387, 399-400, 89 L. Ed. 2d 390, 106 S. Ct. 1121 (1986), the United States Supreme Court held that unavailability is not a constitutional prerequisite to the admission of coconspirator statements. Washington law is in

IMPOSSIBILITY DEFENSE

Lynn contends that he cannot be convicted of attempt to possess a controlled substance, RCW 69.50.407, because the substance actually delivered to him was not a controlled substance. We disagree.

RCW 9A.28.020 defines criminal attempts. Subsection (2) of that statute provides,

> If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.

This court, in *State v. Davidson*, 20 Wn. App. 893, 898, 584 P.2d 401 (1978), *review denied*, 91 Wn.2d 1011 (1979), succinctly stated and applied the rule:

> In this case, defendant intended to buy and possess goods he believed were stolen. He intended to do what he believed to be a criminal act and what would have been criminal if the facts had been as he perceived them. Under RCW 9A.28.020(1), his conduct satisfied the elements of attempt: (1) intent to commit a specific crime; (2) an act which is a substantial step toward the commission of that crime. He intended to buy stolen property and he tendered money in exchange for the property offered to him. Under our statute and the modern decisional law, he has no defense that the property turned out not to be stolen.

(Footnote omitted.) The only difference between *Davidson* and the case at bar is that Lynn intended to buy a controlled substance rather than stolen property. The evidence permits a finding of guilt.

■ We note that Lynn was not charged under the general attempt statute, RCW 9A.28.020, but under RCW 69.50-

---

accord. *See State v. Palomo*, 113 Wn.2d 789, 795 n.5, 783 P.2d 575 (1989), *cert. denied*, 498 U.S. 826, 112 L. Ed. 2d 53, 111 S. Ct. 80 (1990). Since the record establishes that Mosby's statements qualify for admission under ER 801(d)(2)(v), no constitutional error resulted from admitting the statements without a showing of unavailability.

.407.[12] Although the latter statute does not explicitly negate an impossibility defense, absence of such language is without significance. RCW 9A.04.010(2) provides in part:

> The provisions of this title shall apply to any offense . . . which is defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires, and shall also apply to any defense to prosecution for such an offense.

Thus, the above quoted portion of the general attempt statute, RCW 9A.28.020(2), is applicable to a controlled substance attempt, RCW 69.50.407, since there is nothing to the contrary or inconsistent in the latter statute.[13]

The evidence is overwhelming that Lynn intended to purchase a controlled substance and that he took a substantial step in furtherance of that attempt by paying money and accepting delivery of what he believed to be the controlled substance. Such acts constitute a violation of RCW 69.50-.407. The evidence supports the finding of guilty.

Affirmed.

BAKER and KENNEDY, JJ., concur.

---

[12]RCW 69.50.407 provides, in part:

"Any person who attempts . . . to commit any offense defined in this chapter [the Uniform Controlled Substances Act] is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense . . .."

[13]Compare *State v. Austin*, 105 Wn.2d 511, 517, 716 P.2d 875 (1986) (the general attempt statute *penalty* provisions do not apply when the defendant is charged with an attempt pursuant to RCW 69.50.403). In *Austin*, the general attempt statute was in direct conflict with RCW 69.50.403.