[No. 45544-3-I.   Division One.   August 27, 2001.]

JAMES A. DEGEL, *as Guardian*, ET AL., *Appellants*, v. STEVEN G. BUTY, *Respondent*.

---

[43] *Blum*, 415 N.Y.S.2d at 900.

[44] *Arzillo*, 472 N.Y.S.2d at 105.

*Michael T. Schein* (of *Maltman, Reed, North, Ahrens, & Malnati, P.S.*) and *Ron Perey* (of *Law Office of Ron Perey*), for appellants.

*Mary H. Spillane* (of *Williams, Kastner & Gibbs, P.L.L.C.*), for respondent.

COLEMAN, J. — This is an appeal of a defense jury verdict in a medical malpractice case against a doctor who delivered a brain-damaged baby. The focus of the appeal is whether the doctor failed to obtain informed consent when he artificially ruptured the mother's membranes in order to attach an electrode for the purpose of internally monitoring the fetus. The appellants contend that the objective standard regarding causation in the informed consent statute, RCW 7.70.050, is unconstitutional because it undermines a

patient's right to determine his or her own treatment. But the standard for a patient to recover damages in a lawsuit against a doctor has no bearing on the patient's freedom to choose medical procedures. We therefore conclude that the appellants failed to establish that RCW 7.70.050 is unconstitutional. Because appellants' remaining assignments of error,[1] which we address in the unpublished portion of this opinion, do not warrant reversal of the jury's verdict, we affirm.

## FACTS

Beginning in June 1994, Dr. Steven G. Buty, an obstetrician/gynecologist, managed Tara Perisho's pregnancy. During that time, Dr. Buty and Perisho discussed the possible methods of inducing labor. On February 21, 1995, Dr. Buty obtained Perisho's consent to induce labor and attempted to do so by applying prostaglandin gel to Perisho's cervix. The next day at Swedish Medical Center, Dr. Buty applied the gel again and later put Perisho on intravenous pitocin in an effort to induce labor. Although Perisho was in active labor, the nurses were unable to adequately monitor the fetus using the external monitor. Believing this was a medically urgent situation, Dr. Buty artificially ruptured Perisho's membranes (AROM) to attach a scalp electrode for the purpose of monitoring the fetus internally. At the time Dr. Buty did this, the fetus was at a high station in Perisho's pelvis. After performing the AROM, Dr. Buty discovered a segment of prolapsed umbilical cord and noted a slowed fetal heartbeat. Perisho was rushed to the operating room for emergency cesarean section surgery. There, Perisho gave birth to a baby girl who was in poor condition, requiring immediate resuscitation. The baby suffered significant neurological damage, and Perisho experienced ab-

---

[1] Appellants assign error to the trial court's vacation of an order granting partial summary judgment on the medical negligence claim and its denial of their motion for a directed verdict on the informed consent issue. They also challenge the jury instruction defining informed consent, the trial court's admission of the doctor's habit evidence, and the trial court's exclusion of a document describing nursing protocol.

dominal complications from the surgery.

On January 20, 1998, Perisho[2] sued Dr. Buty[3] for damages under theories of medical negligence and failure to obtain informed consent. During trial,[4] Perisho testified that she did not know that Dr. Buty was going to perform the AROM until after he did it. Dr. Buty, however, testified that it was his habit when performing an AROM to tell the patient what he is about to do and what he is doing as he does it. Although Dr. Buty could not remember the specific conversation he had with Perisho before he performed the AROM, he said he was sure—based on his habit of doing so—that he had such a conversation with Perisho. He further testified that prior to the day the baby was born, he explained the AROM procedure to Perisho as a method of inducing labor. He nonetheless admitted that he did not ask Perisho for her permission to perform the procedure immediately before he did so. Dr. Buty said he believed that Perisho consented to the AROM procedure when she consented to be induced.

Dr. Buty also testified that he did not discuss with Perisho the risks associated with performing the AROM at a high station for the purpose of attaching a scalp electrode. Experts testified during trial regarding the risk of prolapsed umbilical cord from the AROM procedure at a high station. These experts' opinions on the risk ranged from "very high" to "extraordinarily small[.]" Another expert testified that the patients from whom he has sought permission to perform an AROM at a high station have always followed his recommendation. Perisho, however,

---

[2] The baby's father and the guardian of the baby's estate are also named as plaintiffs/appellants in this case. We refer to them collectively as "Perisho."

[3] Although Perisho also named other defendants in this complaint, Dr. Buty was the only defendant at trial.

[4] Because the issues raised in Perisho's appeal do not require an understanding of the facts relevant to the negligence issue, the rendition of the facts that follows includes only those relevant to the informed consent issue. *See Backlund v. Univ. of Wash.*, 137 Wn.2d 651, 659, 975 P.2d 950 (1999) ("Negligence and informed consent are alternative methods of imposing liability on a health care practitioner.").

testified that, had she been informed of the risks, she would not have consented to the AROM procedure at a high station for the purpose of attaching a scalp electrode.

After 17 days of testimony, Perisho moved for a directed verdict on the issue of informed consent and the trial court denied that motion. The jury returned special verdicts for Dr. Buty, and the trial court entered judgment in his favor. Perisho filed a posttrial motion for a directed verdict or a new trial on the issue of informed consent. The trial court denied that motion and Perisho appeals.

## DISCUSSION

### Constitutionality of the Informed Consent Statute, RCW 7.70.050

For the first time on appeal, Perisho argues that the informed consent statute—on which the informed consent jury instruction was based—violates the due process clauses of the Fourteenth Amendment and article I, section 7 of the Washington State Constitution. The informed consent statute, RCW 7.70.050(1)(c), requires a patient in a civil negligence case to prove, inter alia, "[t]hat a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of [a] material fact or facts [relating to the treatment]." Dr. Buty urges this court not to consider this issue because Perisho did not raise it at trial. Perisho responds that this is a "manifest error affecting a constitutional right" that she may raise for the first time on appeal under RAP 2.5(a)(3). As presented, we must address the merits of Perisho's argument to determine whether the purported constitutional issue is a manifest error affecting a constitutional right. Therefore, we proceed to merits of the issue. *See State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

A "statute is presumed to be constitutional and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt." *Island*

*County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998). In this context, the party "challenging a statute must, by argument and research, convince the court that there is no reasonable doubt that the statute violates the constitution." *Island County*, 135 Wn.2d at 147. Perisho contends that the objective standard set forth in the informed consent statute, RCW 7.70.050, violates due process of law and privacy by "rob[bing] the mother of her choices about her own body and about the care of her child." Appellant's Br., at 31. Perisho suggests that she should have been able to recover damages for injuries resulting from Dr. Buty's failure to obtain her informed consent to the AROM procedure based on her testimony that she would not have consented to the procedure had she been informed of the risks. By contrast, RCW 7.70.050 and the jury instruction in this case required Perisho to prove that a reasonably prudent patient under similar circumstances would not have consented to the procedure had she been informed of the material risks.

Perisho maintains that to be constitutional, RCW 7.70.050 must contain a subjective standard regarding causation that requires the patient to prove that he or she would not have consented to the proposed treatment had he or she been fully informed. As the Supreme Court has recognized, there are problems with such a standard:

> " 'Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that had he [or she] been informed of the dangers he [or she] would have declined treatment. Subjectively he [or she] may believe so with the 20-20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment.' "

*Backlund v. Univ. of Wash.*, 137 Wn.2d 651, 665 n.4, 975 P.2d 950 (1999) (quoting *Cobbs v. Grant*, 8 Cal. 3d 229, 502 P.2d 1, 11 (1972)). The Supreme Court went on to explain that the objective standard set forth in RCW 7.70.050(1) does not undermine a patient's right to determine his or her own treatment:

While a patient retains the right to make ultimate decisions regarding treatment he or she is to receive, if that patient chooses to bring an informed consent claim under RCW 7.70.050(1), any assertion that he or she would not have consented to the treatment received is judged under this *objective* standard. The relevant *inquiry here is not whether* the [plaintiffs] would or would not have consented, but what a reasonably prudent patient/representative under similar circumstances would have done. RCW 7.70.050(1)(c). Our disposition of this case does nothing to undermine a patient's right to determine his or her own treatment, but requires such patient's assertion, that he or she would not have consented to such treatment, to be reasonable if the patient is to prevail on an informed consent claim.

*Backlund,* 137 Wn.2d at 666.

Although Perisho correctly points out that the plaintiffs in the *Backlund* case did not raise the constitutional issues presented in this appeal, the Supreme Court's insight is nonetheless persuasive. Indeed, the standard for recovering damages in a lawsuit against a doctor has no bearing on the patient's freedom to choose medical procedures. Because Perisho's contentions to the contrary are the crux of her constitutionality argument, we find them to be unpersuasive. We therefore conclude that Perisho failed to establish that the objective standard regarding causation in RCW 7.70.050, which has been adopted by a vast majority of jurisdictions, is unconstitutional. *Backlund,* 137 Wn.2d at 665 n.4.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

AGID, C.J., and BECKER, J., concur.

Review denied at 145 Wn.2d 1031 (2002).