# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72639-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD BERNARD WARNER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 29, 2016 |
| | ) | |

LEACH, J. — A jury convicted Edward Warner of four counts of second degree unlawful possession of a firearm. He appeals, challenging the sufficiency of the evidence to prove that he actually or constructively possessed the firearms, the adequacy of the trial court's efforts to accommodate his hearing impairment, and the effectiveness of his trial counsel in ensuring that he had an adequate accommodation. Finding no error, we affirm.

## FACTS

In the fall of 2013, Adult Protective Services informed Bellingham police that a man residing with an elderly woman named Wendy Christiansen possessed guns and that Christiansen was afraid.

On October 2, 2013, Bellingham Police Detective Jana Bouzek went to Christiansen's residence "for a welfare check." During her visit, Detective Bouzek spoke to resident Edward Warner and asked if he had any guns in the

house. Warner said "yes, he had a .22 target shooting gun" as well as some other guns "in another room in the house." Unaware that Warner had a criminal record, Bouzek did not arrest Warner. Police later learned that Warner was a convicted felon and ineligible to possess firearms.

On October 22, 2013, police executed a search warrant at Christiansen's residence. They found a .44 Magnum pistol, a .357 Smith and Wesson pistol, a .22 Unique pistol, a Winchester rifle, and a 12-gauge Browning shotgun in a back bedroom closet. They also found a "St. Francis" reusable bag and a prescription pill bottle bearing Warner's name next to the guns. The State charged Warner with five counts of second degree unlawful possession of a firearm.

At trial, Bellingham police officers Jana Bouzek, Kyle Nelson, and Josh Danke testified to the facts surrounding the welfare check and the search that produced the firearms.

Christiansen testified that she met Warner through a mutual friend. In the fall of 2013, while recovering from a surgery at St. Francis Recovery House, Warner asked her if he could stay at her house temporarily. Christiansen agreed, and Warner moved in. Although his stay was supposed to be temporary, Warner continued to live with Christiansen a year later.

Christiansen testified that Warner "had some [guns] in his truck that he wanted to put in my house so they wouldn't rust." Although she did not like guns

and had never owned any, Christiansen allowed Warner to put the guns in a back bedroom used for storage. When asked if she actually saw Warner "in possession of the guns" when he and his friend brought them into the house, Christiansen said, "Yes." Christiansen also testified that she told a girlfriend she was concerned about Warner's guns.

Defense investigator Seth Parent testified that Christiansen told him Warner put the guns in the back room to keep them from rusting. She also told Parent she could not remember whether Warner ever possessed or brought any guns into her house, but Warner was present during that interview.

At the close of the evidence, the parties stipulated that Warner had a 2012 felony conviction and was ineligible to possess firearms. They further stipulated that four of the guns found at Christiansen's residence met the definition of "firearm" in the jury instructions.

The court dismissed one count, and the jury convicted Warner of the other four. He appeals.

DECISION

Warner first contends the record contains insufficient evidence for the jury to find, beyond a reasonable doubt, that he actually or constructively possessed the firearms. He claims the State "did not offer evidence based on anything more than an assumption that Mr. Warner's presence in the same house as the seized

firearms demonstrated that he exercised dominion and control over them." We disagree.

Sufficient evidence supports a conviction if, viewing the evidence and reasonable inferences therefrom in a light most favorable to the State, any rational trier of fact could find the crime's essential elements beyond a reasonable doubt.[1] To convict Warner of second degree unlawful possession of a firearm, the jury had to find beyond a reasonable doubt that he knowingly had a firearm in his possession or control and had previously been convicted of a felony. The court's instructions defined possession and control as follows:

> Possession means having a firearm in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.

> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.

> In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the immediate ability to take actual possession of the item, whether the defendant had the capacity to exclude others from possession of the item, and whether the defendant had dominion and control over the premises where the item was located. No single one of these factors necessarily controls your decision.

---

[1] State v. Condon, 182 Wn.2d 307, 314, 343 P.3d 357 (2015).

(Emphasis added.)

Viewed in a light most favorable to the State, the record includes sufficient evidence for the jury to find that Warner actually possessed the firearms. Christiansen saw Warner physically move the guns from his truck to the storage location in the back of her house. Warner did this after asking for permission to move guns "he had . . . in his truck." (Emphasis added.) Warner later admitted to Officer Bouzek that the guns in the back bedroom were his. Contrary to Warner's assertions, this evidence demonstrated more than an innocent momentary handling of the guns. Warner's movement of the guns from his truck in order to properly maintain them, together with his admission of ownership, demonstrated that his possession was more than innocent momentary handling. A reasonable juror could find that his handling of the guns amounted to actual possession.

Sufficient evidence also supports a finding that Warner exercised dominion and control over, and therefore constructive possession of, the guns. Only Warner and Christiansen lived in her home during the period in question. Christiansen had never owned or possessed a gun. As previously noted, Warner asked Christiansen for permission to move the guns from his truck to her house to keep them from rusting. Warner then moved the guns from his truck to the back bedroom of Christiansen's home. Officer Bouzek testified that during the

welfare check Warner told him he had a ".22 target shooting gun" and other guns in another room. Officers executing the search warrant found Warner's prescription bottle and hospital bag next to the guns. Viewed in a light most favorable to the State, this evidence supports a finding that Warner constructively possessed the guns.

Warner next contends that the trial court denied him due process and his right to appear and defend because "no accommodation was provided . . . to ensure that [he] could hear '100% of the proceedings,' as due process demands." After Warner filed his opening brief, the parties appeared in superior court to settle the record. The trial court found that contrary to Warner's assertions in his opening brief, the court provided him a hearing device throughout the trial. In his reply brief, Warner acknowledges the court's finding but points to other findings indicating that he still had some difficulty hearing and did not use the device consistently. Warner concludes, "The court-provided accommodation was therefore inadequate to ensure that [he] could hear '100% of the proceedings,' as due process demands." This claim fails for several reasons.

First, Warner raises his claim that the hearing accommodation was constitutionally inadequate for the first time on appeal. Although Warner's counsel stated several times that Warner needed witnesses to speak directly into

the microphone "so it's probably a little bit clearer," Warner concedes his counsel "never stated that the provided listening device was inadequate or was not functioning properly for his client." Despite this concession and despite the State's argument that the issue cannot be raised for the first time on appeal under RAP 2.5(a), Warner fails to offer any basis for reviewing this claim for the first time on appeal. He has the burden to do so, and that burden includes demonstrating that the alleged error had practical and identifiable consequences in his trial.[2] Warner has not met that burden.

Second, our review of the record indicates that any problems with the hearing device did not have practical and identifiable consequences in Warner's trial. Except for occasional problems with witnesses or the court not speaking directly into the microphone, the record indicates that Warner had no trouble hearing. For example, when the court addressed him, Warner responded immediately and appropriately. On the few occasions when defense counsel asked a witness or the court to speak more directly into the microphone, the absence of further complaints from Warner indicates that the problem was

---

[2] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) ("The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest', allowing appellate review."); State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992) ("Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.").

resolved.[3] And while the court recalled that Warner "at times didn't use [the court-provided hearing device] and found it difficult to use," nothing in the record supports an inference that any intermittent use of or difficulties operating the device resulted in Warner being unable to hear the proceedings. Warner fails to demonstrate the inadequacy of his hearing accommodation or that any inadequacy prejudiced his defense.

Alternatively, Warner argues that his counsel provided ineffective assistance by failing to request a more effective accommodation for his hearing impairment. But to prevail on that claim, Warner must demonstrate both deficient performance and prejudice, i.e., a reasonable probability that but for counsel's omission, the outcome of the proceeding would have been different.[4] For the reasons discussed above, he has not met that burden.

---

[3] See In re Marriage of Olson, 69 Wn. App. 621, 624, 850 P.2d 527 (1993) ("Following his requests for the witness to speak louder, Mr. Olson was silent, suggesting that the witness' modified voice level allowed Mr. Olson to hear. Never did Mr. Olson indicate a need for additional help in hearing the proceedings, nor did he state that although the witness was speaking louder, he still could not hear.").

[4] McFarland, 127 Wn.2d at 334-35.

Affirmed.

Leach, J.

Spearman, C.J.

Appelwick, J.