IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77187-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RAMIRO CHAVEZ CASTILLA, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 11, 2019 |
| | ) | |

HAZELRIGG-HERNANDEZ, J. — Ramiro Chavez Castilla appeals his conviction for third degree rape. He claims that the trial court erred in excluding evidence that the victim suffered from preexisting anxiety and posttraumatic stress disorder. He also claims that the prosecutor improperly commented about his exercise of certain constitutional rights. We affirm.

## FACTS

In August 2015, Ramiro Chavez Castilla and M.F. met through a dating application. They exchanged text messages, became acquainted, and agreed to have a first date. On August 16, 2015, M.F. went to Chavez Castilla's apartment to play scrabble and drink some wine.

While at the apartment, the two listened to music, played scrabble, kicked a soccer ball around, and drank wine and champagne. After a while, M.F. started "to feel really out of it" and she sat down on the couch. Chavez Castilla also sat down on the couch. The two engaged in conversation and eventually began kissing, consensually, for several minutes. Then, M.F. said she needed to lay

down and Chavez Castilla suggested that she lay down in his bedroom. The versions diverge as to what later occurred.[1]

According to M.F., once in Chavez Castilla's bedroom, she initially laid on the floor. Chavez Castilla then told M.F. that it was okay to lay down in his bed and she accepted his offer. At that point, Chavez Castilla started kissing her and trying to put his hand in her pants. She pulled Chavez Castilla's hands away and told him that she was not going to sleep with him. He responded by saying, "[Y]ou know you want to." He continued trying to kiss and grab at M.F.'s pants. Eventually Chavez Castilla stopped his sexual advances and left the room. M.F. fell asleep.

Next, M.F. recalls waking up face down on the bed with Chavez Castilla sitting on the back of her thighs, with her hands pinned over her head. As he restrained M.F.'s hands with one of his own, Chavez Castilla managed to pull down M.F.'s pants with his other hand. M.F. physically resisted his efforts saying, "No" and "Stop" to no avail. She testified that Chavez Castilla had pulled her pants down to the point where she "couldn't reach them because of how far they were, and he laughed" when she tried to pull them back up. He then "pulled [her] underwear down . . . bit [her] butt . . . slapped [her] ass," and inserted his fingers and, later, his penis into her vagina. She recalled crying during the entire ordeal.

---

[1] Chavez Castilla and M.F. also dispute whether Chavez Castilla's cousin, who resided with him, was in the apartment on the night in question. According to M.F., when she entered Chavez Castilla's apartment, she saw shoes that looked to belong to a female. When she asked Chavez Castilla about them, he said, "[T]hey were his cousin's and that she was gone." She did not see signs of anyone else being in the apartment. Chavez Castilla, on the other hand, testified that his cousin was present at the apartment and studying in her room. At trial, Chavez Castilla's cousin could not confirm whether she was in the apartment or not on August 16, 2015.

A short while later, Chavez Castilla stopped and sat up. At that point, M.F. got off the bed, she said, "I have to go" and ran out of his apartment. Before leaving the apartment, Chavez Castilla asked M.F. if she wanted company while walking to her car and she screamed, "No."

While Chavez Castilla acknowledged kissing M.F. on the couch and offering his bed for her to rest, he claimed that no sexual contact occurred between the two in his bedroom. Instead he testified that when M.F. went to sleep in his bed, he was on his phone, watching television, and grabbed something to eat. Chavez Castilla stated that M.F. had "[h]ardly [slept] an hour" when she woke up looking anxious. He says he asked M.F. if she was okay and M.F. responded that, "she was fine and that she wanted to go home." He then walked her to the door and asked if she "was okay to drive." M.F. responded that "she was ok" and left. The two never contacted or saw each other again.

After leaving Chavez Castilla's apartment, M.F. did not immediately report to the police that she had been raped, nor did she immediately seek medical attention. Instead, M.F. called and told her sister and that she had just been raped, but did not want to make a police report. Days later, M.F. disclosed the events to her mother. About three weeks later, M.F. went to her primary care physician to get tested for sexually transmitted diseases. M.F. told the doctor that she had been "raped on a first date", and that she had "been having severe panic attacks and insomnia since that time." M.F. reportedly told her therapist about being raped as well.

On January 8, 2016, M.F. reported to law enforcement that she had been raped by Chavez-Castilla. In July 2016, the State charged Chavez Castilla with one count of rape in the third degree. RCW 9A.44.060(1)(a). He pleaded not guilty to that charge.

Before trial, Chavez Castilla asked to introduce evidence that M.F. had recent, pre-August 2015, "issues with anxiety, depression, PTSD [posttraumatic stress disorder] for which she had to see medical providers" because, he argued, that information was "relevant to her actions" on August 16, 2015. He claimed this information provided a basis to call M.F.'s "credibility into question when she appears to have presented her treatment provider with false information." The State objected, contending that such information was irrelevant because M.F. was not taking any medication at the time she was raped by Chavez Castilla. The State further argued, "No longer taking previously prescribed medications because the medications did their job and are no longer needed does not bear in any way on someone's credibility and is therefore inadmissible as impeachment evidence."

The trial court denied Chavez Castilla's request. In reaching its ruling, the trial court noted that M.F. had been treated by her doctor for about six months prior to September 2015 for "anxiety, panic attacks and depression pre-dating and unrelated to this sexual assault." "If her symptoms had completely resolved and she was no longer taking Celexa, then the prior issues of anxiety, panic attacks, and depression are completely irrelevant. If they had not completely resolved, then they are slightly relevant." The trial court's written ruling clarified that while the fact M.F. had seen her doctor in the past is admissible, "the reasons for,

diagnoses and medications prescribed during any previous visits is not admissible."

During trial, the State asked M.F. how she was doing emotionally in the months after she saw her doctor in September 2015 and if she was getting better. M.F. answered, "No. I have PTSD. I try to pretend like it didn't happen. . . .It didn't work. I was a wreck emotionally." On cross-examination, defense counsel asked M.F. about to whom she disclosed her rape and the details she disclosed. He asked M.F. to confirm that she had been seeing a therapist prior to September 9, 2015.[2] On redirect, the State asked about M.F.'s reasoning behind initially not reporting the rape, and whether she "enjoyed" or had "fun" disclosing her rape to various people.

A jury found Chavez Castilla guilty of rape in the third degree. Chavez Castilla appeals.

## DISCUSSION

Chavez Castilla argues that his right to a fair trial was violated on two grounds. First, he claims the trial court erroneously limited his cross-examination of M.F. Second, he contends the prosecutor committed misconduct while questioning M.F.

I.     Chavez Castilla's Right to Confront M.F.

Chavez Castilla contends the trial court "erred in concluding that M.F.'s prior diagnosis of PTSD and anxiety, resulting from and [sic] earlier assault by her then

---

[2] M.F.'s doctor testified that M.F. had been seeing a therapist prior to September 9, 2015. The record, however, is silent on the nature and scope of treatment M.F. previously sought from a therapist.

boyfriend, was inadmissible." Furthermore, he argues that the evidence "would have supported [his] testimony that he did not rape" M.F., when the State opened the door to testimony asking her about her post rape emotional health, and the status of her preexisting mental health. The consequences of the trial court's errors, Chavez Castilla contends, resulted in the denial of his confrontation clause rights and that the error was not harmless beyond a reasonable doubt.

The right to confront and cross-examine an adverse witness is protected by both the federal and state constitutions. U.S. CONST. amend VI; WASH. CONST. art. I, § 22; Crawford v. Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). The primary and most significant component is the right to conduct a meaningful cross-examination of an adverse witness. State v. Foster, 135 Wn.2d 441, 456, 957 P.2d 712 (1998). However, this right is not absolute, as "[t]he confrontation right and associated cross-examination are limited by general considerations of relevance." State v. Darden, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002)

The Washington Supreme Court has instructed that appellate courts "apply a three-part test to determine whether a trial court violated a defendant's right to confront a witness by limiting the scope of cross-examination" State v. Lee, 188 Wn.2d 473, 488, 396 P.3d 316 (2017),

> "First, the evidence must be of at least minimal relevance. Second, if relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. Finally, the State's interest to exclude prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld."

Lee, 188 Wn.2d at 488 (quoting Darden, 145 Wn.2d at 622). Accordingly, we review the first part of this test for an "abuse of discretion"[3] and, if that test is met, we review the remaining two parts of the test de novo. State v. Clark, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017)

To prevail on his first argument, Chavez Castilla must establish that the excluded evidence—M.F.'s prior mental health status—was at least minimally relevant. Lee, 188 Wn.2d at 488. Generally, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold to admit relevant evidence is a low bar. Darden, 145 Wn.2d at 621. Impeachment evidence is relevant if (1) it tends to cast doubt on the credibility of the person being impeached and (2) the credibility of the person being impeached is a fact of consequence to the action. State v. Allen S., 98 Wn. App. 452, 459-60, 989 P.2d 1222 (1999).

The case of State v. Tigano, 63 Wn. App. 336, 818 P.2d 1369 (1991), is instructive. There, the appellate court affirmed the trial court's exclusion of evidence of prior drug use but there was no evidence of drug use at the time of the events at issue. Tigano, 63 Wn. App. at 345. It further concluded,

> For evidence of drug use to be admissible to impeach, there must be a reasonable inference that the witness was under the influence of

---

[3] "A trial court abuses its discretion if its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). A court's decision "is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard." Littlefield, 133 Wn.2d at 47. Grounds are "untenable . . . if the factual findings are unsupported by the record." Littlefield, 133 Wn.2d at 47.

drugs either at the time of the events in question, or at the time of testifying at trial. . . . Evidence of drug use on other occasions, or of drug addiction, is generally inadmissible on the ground that it is impermissibly prejudicial.

Tigano, 63 Wn. App. at 344 (footnote and citations omitted).

Here, the record indicates that M.F. did not have any symptoms of, and was not taking medication for, any mental health issues on the date she met Chavez Castilla. As an initial matter, while the record demonstrates consensus that M.F. previously suffered from anxiety, it does not appear to contain any evidence that M.F. previously had or was diagnosed with PTSD. The trial court also noted in its pretrial order excluding M.F.'s prior mental health information that

> The defense has interviewed both [M.F. and her doctor], and there is no evidence that on the night she was raped [M.F.] was under the influence of or impacted in any way by anything other than the alcohol provided to her by the defendant and the fear and control he exerted over her in the moment. In fact, [M.F.] herself has confirmed she was not taking any prescribed or non-prescribed medications on or around the time she was raped.

During the course of pretrial arguments, defense counsel stated that she was unaware if M.F. was taking an antidepressant at the time of the rape and did not have an expert to testify how such medication might have affected M.F. Nor was there any testimony elicited at trial to indicate otherwise.

Moreover, a defendant is guilty of rape in the third degree when he or she engages in sexual intercourse with another person when the other person did not consent to the sexual intercourse, and such lack of consent was clearly expressed by the other person's words or conduct. RCW 9A.44.060(1)(a).

Here, Chavez Castilla denied having any sexual contact or intercourse with M.F. and M.F. described being raped by him. These are two diametrically opposed

versions of the evening of August 16, 2015. Whether M.F. suffered from mental health conditions prior to the rape, but not during the rape, and whether she suffered from PTSD after the rape do not,[4] in our view, call the veracity of M.F.'s testimony into question. For these reasons, M.F.'s prior mental health information was not relevant.

We hold that the trial court's exclusion of M.F.'s mental health information was not an abuse of discretion. Therefore, the exclusion of this evidence did not deprive Chavez Castilla of his right to confront M.F. And, because he does not meet the first requirement of the three-part test in, his claim that the trial court deprived him of rights under the confrontation clause fails. Lee, 188 Wn.2d at 488

## II. Prosecutorial Misconduct.

Next, for the first time on appeal, Chavez Castilla argues that his right of confrontation was compromised by the prosecutor's questions on redirect examination of M.F. He claims, by way of the following testimony, the State directly implicated his right to prepare for trial and his right to cross-examine M.F.:

> Q: If I have the list correct, you have spoken to your sister, your mother, a doctor, Deputy Boyer, Detective Luitgaarden, two prosecutors, and the defense attorney about what happened to you that night. Is that correct?
> A: And yourself.
> Q: And myself. Is that correct? Did you enjoy talking to your sister about this?
> A: No.

---

[4] We reject Chavez Castilla's claim that M.F. "opened the door" to her prior mental health information by testifying she suffered from PTSD after the rape. Under the open door doctrine, a party may "open the door" for the other party to pursue evidence that would not otherwise be admissible. State v. Berg, 147 Wn. App. 923, 939, 198 P.3d 5299 (2008), abrogated on other grounds by, State v. Mutch, 171 Wn.2d 646, 254 P.3d 303 (2011). As the State points out, whether M.F. "suffered from panic attacks and anxiety weeks after being raped played little role in this case. . . The fact that she previously suffered from anxiety would not explain her then-existing emotional state."

Q: Did you enjoy talking to your mother about it?
A: No.
Q: Did you enjoy talking to your doctor about it?
A: No
Q: How about talking to Deputy Boyer, was that fun?
A: No.
Q: Did you enjoy talking to Detective Luitgaarden?
A: No.
Q: Did you enjoy talking to the prosecutors in our office that were not me?
A: No.
Q: Did you enjoy the defense interview?
A: No.
Q: Have you enjoyed your time here today?
A: No.

Although Chavez Castilla did not object to these questions at trial, issues of constitutional magnitude may be reviewed initially on appeal. State v. Scott, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). In analyzing an alleged constitutional error raised initially on appeal, State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992) states

> First . . . make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. . . .[I]f the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then . . . the court undertakes a harmless error analysis.

To prevail on a claim of prosecutorial misconduct, Chavez Castilla must show that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). A defendant suffers prejudice only where there is a substantial likelihood that the prosecutor's misconduct affected the jury's verdict. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). When addressed for the first time on appeal, however, reversal is only required if the conduct is so flagrant and ill-intentioned that it caused an enduring

and resulting prejudice that could not have been neutralized by a curative jury instruction. State v. Warren, 165 Wn.2d 17, 43, 195 P.3d 940 (2008).

In consideration of claims of improper prosecutorial conduct, we review the prosecutor's questions in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). We find that the prosecutor did not—either directly or indirectly—comment on Chavez Castilla's exercise of his constitutional rights. Notably, most of the people to whom M.F. disclosed her rape were informed before M.F. decided to file a police report, and she informed others prior to the State filing charges against Chavez Castilla. Thus, it is a difficult leap to connect M.F.'s feelings on talking about her rape prior to filing a report with Chavez Castilla's exercise of his constitutional rights.

Thus, we hold that the prosecutor's conduct was not so flagrant and ill-intentioned that it caused an "enduring and resulting prejudice" incurable by a jury instruction. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). This claim of error, therefore, presents no basis for reversal.

We affirm.

_____

WE CONCUR:

_____          _____
Andrus, J.                        Mann, ACJ

- 11 -