[No. 38049.    Department One.    October 21, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. PEDRO OCHOA
LOPEZ, *Appellant.*\*

*William F. Lockett,* for appellant.

*Charles O. Carroll* and *J. Hartly Newsum,* for respondent.

\*Reported in 406 P.2d 941.

WARD, J.†—The defendant, Pedro Ochoa Lopez, was convicted on three counts, each charging him with a separate sale of a narcotic drug, marijuana. The two assignments of error made do not require a statement of the evidence upon which the jury found defendant guilty.

The first claim of error arises out of the following situation. On the morning of the third day of the trial, after both the state and defense had rested, the trial judge called counsel for both sides to his chambers and notified them of a report he had received that one of the jurors, a woman, was ill but was present in court. The trial judge invited counsel to agree to proceed with 11 jurors. Defendant refused and instead requested permission for further voir dire examination of the ill juror. His request was denied by the court. Instead, court was convened with all 12 jurors in the jury box. The court instructed the jury, counsel argued the case, and at 11:15 a. m., the 12 jurors retired to consider their verdict, all 12 jurors participating and returning unanimous verdicts of guilty.

The record discloses nothing whatsoever with respect to the nature, extent, or seriousness of the juror's illness, other than what, if anything, may be inferred from (1) the fact that her illness was reported to the trial judge and (2) the fact that she participated in all court and jury proceedings from the time court convened for the morning session until the verdicts were returned and accepted for filing.

In the absence of anything in the record disclosing otherwise, it must be assumed that the trial judge observed the condition of the juror and concluded from his observation that she was mentally and physically able to perform her duties as a juror. The verdict will be considered as a verdict returned by 11 jurors only where there is an affirmative showing that one juror was so ill or mentally incapacitated that the juror was unable to perform the duties and deliberate upon the verdict. 50 C.J.S. *Juries* § 123(b), p. 842.

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

■ Whether the court should permit further voir dire examination of a juror after the jury has been accepted is a matter which must rest in the sound discretion of the trial court. 50 C.J.S. *Juries* § 273, p. 1038. In the absence of anything in the record other than the meager facts shown, we cannot say that the trial judge abused his discretion in refusing the defendant's request for further voir dire examination.

The defendant's second assignment of error arises out of these facts. After the state rested, the defendant took the witness stand as a witness in his own behalf and denied making the three sales of marijuana with which he had been charged. On cross-examination, the deputy prosecuting attorney asked the defendant whether or not he had written out a statement in his own handwriting during the course of a conversation which he had with his probation officer. On stating that he had, he was asked: "Q. Is this a free and voluntary description of what took place in your own handwriting?" On affirmative answer, the statement was marked exhibit 5 and, over defendant's objection, admitted in evidence.

On redirect examination, the defendant, in answer to his counsel's question, testified with respect to exhibit 5: "A. . . . He asked me if I would, in my own handwriting, fill out a report, a statement. So I said I would try and I made out a statement and signed it and gave it to him. Q. Did he in any way influence you to give this statement? A. No, he didn't."

There had been no preliminary determination of voluntariness pursuant to the procedure outlined in Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0. Defendant, in his second assignment of error, urges that exhibit 5 was inadmissible in evidence solely by reason of noncompliance with this rule of court and the constitutional error claimed resulting from such ruling on evidence.

Defendant does not claim that the statement was made involuntarily. The defendant does not claim that the confession was the product of force, duress or coercion in any form. He claims no abuse or mistreatment of any kind. He

claims no promises or inducements of any kind held out to him by any person. He does not claim that the facts which he set out in his own handwriting are not true or that they are misleading in any way. He does not state that if a hearing had been held under Rule 101.20W he would have given testimony to establish that the statement was involuntarily obtained from him or that his testimony with respect to exhibit 5 would have differed in any respect from that given on the trial of the case. He does not state that if a further hearing be given him under order of this court he will claim that exhibit 5 was involuntarily obtained from him.

■ Two primary objectives were sought in the adoption of Rule 101.20W: (1) to avoid the prejudicial impact upon the jury of a confession which, under the former practice, might be deemed involuntary by the court, but which, nevertheless, would be presented to the jury, and (2) to insure to the defendant all rights which he might have under the Fifth Amendment to refuse to testify in his own behalf.

In this case, the defendant admitted that the confession was voluntarily given. He voluntarily took the witness stand and testified without objection to a series of prior convictions, including one conviction of possession of marijuana. Defendant's counsel does not claim that he was surprised by such testimony.

■ By reason of the fact that, under the record in this case, there can be no issue with respect to the voluntariness of the defendant's confession, we determine that his rights under neither the provision of the Fifth Amendment nor under the due process clause of the Fourteenth Amendment were in any way violated.

In *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 Sup. Ct. 1774 (1964), the Supreme Court held that if there be any factual question as to voluntariness of the confession, such question should be determined in a separate proceeding before the confession be submitted to the jury in the trial of the case.[1] It will be noted, however, that in its dis-

---

[1]Jackson claimed that his confession was involuntary because it was taken in the hospital shortly after he had been shot in the liver and

position of the case, the Supreme Court did not grant Jackson a new trial, but sent the case back to the New York State Court to determine the issue of voluntariness only, with the statement:

But as to Jackson, who has already been convicted and now seeks collateral relief, we cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly determined to be voluntary. (p. 395.) [2]

If we apply the rule of *Jackson v. Denno, supra,* to this case, we would have a hearing before the trial court in the absence of the jury, upon the voluntariness of Lopez' confession, with no claim now made by the defendant that his confession was involuntarily obtained. To direct such collateral rehearing, we would have to assume, contrary to all facts now before this court, that the defendant would claim that he gave false testimony on the trial of this case and that he now wishes to truthfully claim that his confession was involuntarily obtained. Absent anything in the record to show such intent on the part of the defendant, to change his testimony, we must assume that at the further collateral hearing, his testimony would be the same as that given at

---

lung, had lost 500 cc. of blood, had been given 50 milligrams of demerol and 1/50 of a grain of scopolamine, and after he had told his interrogator, "Look, I can't go on."

[2] ". . . It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence. Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession; but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon

the trial. In such case it is difficult to conceive of a more idle and useless procedure.[3]

The judgment and sentence is affirmed.

ROSELLINI, C. J., FINLEY, HUNTER, and HALE, JJ., concur.

---

it, it was entitled to do so. Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that Jackson's confession was involuntary, there must be a new trial on guilt or innocence without the confession's being admitted in evidence." *Jackson v. Denno, supra,* p. 394.

[3]If prosecuting attorneys need be warned of the danger of using this decision as a precedent in cases where there is any question of the voluntariness of the statement made by the defendant, their attention is directed to the annotation in 89 A.L.R. 2d 478 (1963) "Impeachment of accused as witness by use of involuntary or not properly qualified confession." Their attention is also directed to the minority opinion of Justice Black urging that there be a complete new trial in *Jackson v. Denno, supra.*