975 P.2d 963 (1999)
137 Wash.2d 746
STATE of Washington, Petitioner,
v.
Douglas B. WILLIAMS, Respondent.
No. 67009-9.
Supreme Court of Washington, En Banc.
Argued February 24, 1999.
Decided April 22, 1999.
Steven Tucker, Spokane County Prosecutor, Janet Gemberling, Deputy, Spokane, for Petitioner.
Paul J. Wasson, II, Spokane, for Respondent.
ALEXANDER, J.
The State of Washington charged Douglas B. Williams, in Spokane County Superior Court, with one count of delivery of cocaine. Before trial a hearing was held pursuant to Rule 3.5 of the Superior Court Criminal Rules (hereinafter CrR 3.5) to determine the admissibility of custodial statements that Williams had given to a Spokane police officer. The statements were held to be admissible. At trial the statements were admitted and Williams was convicted. Williams appealed to the Court of Appeals, arguing that the trial court's failure to advise him of certain rights during the CrR 3.5 hearing was reversible error. That court reversed the trial court and remanded for a new trial. The State petitioned this court for discretionary review. We granted review and now reverse the Court of Appeals, concluding that Williams may not raise the issue that the CrR 3.5 procedure was not complied with because he did not raise it at trial.

FACTS
In 1995 Williams allegedly sold a police informant .4 grams of cocaine base, more commonly known as "crack." Three weeks later, Detective Mark Burbridge of the Spokane Police Department arrested Williams after obtaining a search warrant authorizing the search of Williams's residence. After being advised of his Miranda[1] rights by Burbridge, Williams waived his right to remain silent and gave Burbridge a statement in which he "denied ever having sold crack cocaine or knowing anything about the drug *964 business." Verbatim Report of Proceedings (VRP) at 54.
Williams and three other persons were each charged with one count of delivering a controlled substance (cocaine). Williams was tried separately. Prior to his trial, a CrR 3.5 hearing was held to determine whether Williams's custodial statements could be admitted at trial. Burbridge was the sole witness to testify at the hearing. Following Burbridge's testimony, the trial judge asked whether there was "[a]ny other testimony?" VRP at 23. In response, Williams's counsel responded, "I don't have any testimony, Your Honor." VRP at 23. It is undisputed that the trial judge did not expressly advise Williams of his testimonial rights during the CrR 3.5 proceeding. At the end of the hearing the trial judge ruled that Williams's statements were admissible. A jury trial was subsequently held at which Williams's statements were admitted. Williams testified, and was convicted of the charge. Williams appealed to Division Three of the Court of Appeals, assigning error to the trial court's failure to advise Williams, under CrR 3.5(b), of his testimonial rights. That court in a 2-1 decision, reversed the conviction and remanded for a new trial. State v. Williams, 91 Wash.App. 344, 955 P.2d 865, review granted, 136 Wash.2d 1030, 972 P.2d 467 (1998). We granted the State's petition for review.

ANALYSIS
The State asserts that the Court of Appeals erred in considering the issue raised in Williams's appeal because Williams did not raise it at trial. The State correctly observes that under Rule 2.5(a) of the Rules of Appellate Procedure (RAP), appellate courts will generally not consider issues raised for the first time on appeal. Williams responds that the Court of Appeals correctly considered the issue on the basis that "a claim of error may be raised for the first time on appeal if it is a `manifest error affecting a constitutional right.'" State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (quoting RAP 2.5(a)(3); citing State v. Scott, 110 Wash.2d 682, 686-87, 757 P.2d 492 (1988); State v. Lynn, 67 Wash.App. 339, 342, 835 P.2d 251 (1992)). The burden, however, is upon the defendant to make the required showing. "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error `manifest,' allowing appellate review." McFarland, 127 Wash.2d at 333, 899 P.2d 1251 (emphasis added) (citing Scott, 110 Wash.2d at 688, 757 P.2d 492; Lynn, 67 Wash.App. at 346, 835 P.2d 251). The fundamental issue in this case, therefore, is whether the trial court's failure to comply with its duty under CrR 3.5(b) to explain Williams's testimonial rights is a manifest error affecting a constitutional right.
Under CrR 3.5(a), "[w]hen a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible." The trial judge is required to inform the defendant at that hearing
that: (1) he may, but need not, testify at the hearing on the circumstances surrounding the statement; (2) if he does testify at the hearing, he will be subject to cross examination with respect to the circumstances surrounding the statement and with respect to his credibility; (3) if he does testify at the hearing, he does not by so testifying waive his right to remain silent during the trial; and (4) if he does testify at the hearing, neither this fact nor his testimony at the hearing shall be mentioned to the jury unless he testifies concerning the statement at trial.
CrR 3.5(b). Although the trial judge did not provide this information to Williams, Williams did not complain of his failure to do so until his appeal.
Williams has not even met his threshold requirement of identifying a constitutional error. See McFarland, 127 Wash.2d at 333, 899 P.2d 1251. We consider his claim in light of the purpose of CrR 3.5 as a whole. CrR 3.5 was formerly CrR 101.20W:
Criminal rule 101.20W (CrR 3.5) is Washington's confession procedure rule. Its basic purpose is to provide a uniform procedure *965 for the admission of voluntary confessions (as well as other [incriminating] custodial statements, see State v. Jones, 65 Wash.2d 449, 455, 397 P.2d 815 (1964)) in a fashion that will prevent the jury from hearing an involuntary confession. The rule's significant impact is that the trial judge resolves the issue of voluntariness in the absence of the jury and thus obviates the due process problems that would arise where the jury hears an involuntary confession.
State v. Myers, 86 Wash.2d 419, 425, 545 P.2d 538 (1976) (citing Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964); State v. Lopez, 67 Wash.2d 185, 188, 406 P.2d 941 (1965); State v. Taplin, 66 Wash.2d 687, 690, 404 P.2d 469 (1965)). CrR 101.20W, which became effective in 1967, was designed to enforce constitutional rights found by the United States Supreme Court. See State v. Woods, 3 Wash.App. 691, 695, 477 P.2d 182 (1970) (citing Jackson, 378 U.S. 368, 84 S.Ct. 1774; Miranda, 384 U.S. 436, 86 S.Ct. 1602). The Court has held that under the Fourteenth Amendment, "[a] defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." Jackson, 378 U.S. at 380, 84 S.Ct. 1774. This hearing should occur "at some stage in the proceedings," Jackson, 378 U.S. at 376, 84 S.Ct. 1774, and the Court wrote that "[i]t is both practical and desirable that ... a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence." Jackson, 378 U.S. at 395, 84 S.Ct. 1774.
Even though CrR 3.5, after changes effective in 1973, now more generically governs the admission of any "statement of the accused," CrR 3.5(a), the constitutional command that is its foundation has not expanded. Indeed, the rule itself is still entitled "Rule 3.5. Confession procedure." CrR 3.5 (emphasis added); see also State v. Wolfer, 39 Wash.App. 287, 291, 693 P.2d 154 (1984) ("CrR 3.5 provides a mechanism which allows a defendant to have the voluntariness of an incriminating statement determined in a preliminary hearing.") (emphasis added) (footnote omitted), review denied, 103 Wash.2d 1028 (1985). The rule, as a whole, is still intended to ward against the admission of involuntary, incriminating statements. Even under a former version of CrR 3.5, where a confession was admitted into evidence without the required pretrial hearing, we held that remand for such a hearing was unnecessary where there was no question of the confession's voluntariness. See Lopez, 67 Wash.2d at 189-90, 406 P.2d 941. Under such circumstances, after all, "it is difficult to conceive of a more idle and useless procedure." Lopez, 67 Wash.2d at 190, 406 P.2d 941 (footnote omitted).
In its opinion, the majority in Williams cited a Division Two opinion for the proposition "that the failure to comply with CrR 3.5(b) was error of constitutional magnitude which could be raised for the first time on appeal." Williams, 91 Wash.App. at 346, 955 P.2d 865 (citing State v. Alexander, 55 Wash. App. 102, 105, 776 P.2d 984, review denied, 110 Wash.2d 1039 (1989)). The facts of Alexander are very different than the facts here and, consequently, the case does not avail Williams. In Alexander no CrR 3.5 hearing was held despite the defendant's objection, "on constitutional grounds," to the introduction of his incriminating custodial statement through a police officer's testimony. Alexander, 55 Wash.App. at 103, 776 P.2d 984. Therefore, "the court made its decision to admit this statement based only on the officer's version of the facts, without permitting the defendant the opportunity to testify or present other evidence, if any." Alexander, 55 Wash.App. at 105, 776 P.2d 984. Obviously Alexander is distinguishable on a factual basis.
More pertinent is a Division One opinion where no prejudice was found in a trial court's failure to give the CrR 3.5(b) advice of rights. See State v. Summers, 52 Wash. App. 767, 774, 764 P.2d 250 (1988), review denied, 112 Wash.2d 1006 (1989). The Court of Appeals in Williams distinguishes Summers by noting that in Summers "the sole basis for the defendant's challenge to the admissibility of his statement was the taint stemming from the prior search of his room." *966 Williams, 91 Wash.App. at 347 n. 2, 955 P.2d 865. This demarcation is curiously inconsistent with the rest of the Williams opinion, though, which broadly rules that the omission of the CrR 3.5(b) advice is reversible error per sea rule that certainly runs contrary to Summers's embrace of precedent holding that even the "failure to hold a 3.5 hearing does not require reversal if there is no genuine issue as to voluntariness." Summers, 52 Wash.App. at 774 n. 7, 764 P.2d 250 (citing State v. Vandiver, 21 Wash.App. 269, 272-73, 584 P.2d 978 (1978), review denied, 91 Wash.2d 1011 (1979); State v. Mustain, 21 Wash.App. 39, 42-43, 584 P.2d 405 (1978)); see also Wolfer, 39 Wash.App. at 292, 693 P.2d 154 (CrR 3.5 hearing not required in bench trials based upon "reasoning that a judge is presumed to rely only upon admissible evidence in reaching a decision.") (citations omitted).
Significantly, the constitution does not require a trial court to inform a defendant of his or her constitutional right to testify at trial. See State v. Thomas, 128 Wash.2d 553, 557, 910 P.2d 475 (1996) ("We now expressly hold that a trial judge is not required to advise a defendant of the right to testify in order for a waiver of the right to be valid."). Although the "waiver of the right to testify must be knowing," this court has written that "no on-the-record waiver is required." Thomas, 128 Wash.2d at 559, 910 P.2d 475 (citations omitted). Instead,
[a]s with the right to self-representation, the right not to testify, and the right to confront witnesses, the judge may assume a knowing waiver of the right from the defendant's conduct. The conduct of not taking the stand may be interpreted as a valid waiver of the right to testify.
Thomas, 128 Wash.2d at 559, 910 P.2d 475. Indeed, we noted that "a discussion between the trial court and defendant regarding the right to testify might have the undesirable effect of influencing the defendant's decision not to testify." Thomas, 128 Wash.2d at 560, 910 P.2d 475 (citing In re Personal Restraint of Lord, 123 Wash.2d 296, 317, 868 P.2d 835 (1994)). In light of Thomas, we cannot fathom how the mere procedural requirements surrounding the right to testify during a CrR 3.5 pretrial hearing would somehow exceed the constitutional requirements enforcing a right to testify in trials which "has its source in the Fourteenth Amendment's due process clause, in the compulsory process clause of the Sixth Amendment, and as a necessary corollary to the Fifth Amendment's privilege against self-incrimination." Thomas, 128 Wash.2d at 557, 910 P.2d 475 (citing Rock v. Arkansas, 483 U.S. 44, 51-52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). After all, "[p]retrial hearings are but mechanical devices designed to effectuate substantive rights and remedies." State v. Taylor, 30 Wash.App. 89, 93, 632 P.2d 892 (citing State v. Wilson, 28 Wash.App. 821, 626 P.2d 998, review denied, 96 Wash.2d 1022 (1981)), review denied, 96 Wash.2d 1012 (1981). Thus, the mere failure to give the CrR 3.5(b) advice of rights is not constitutional error and Williams cannot raise it for the first time on appeal.[2]See McFarland, 127 Wash.2d at 333, 899 P.2d 1251. The right that is protected by the CrR 3.5 hearingto have the voluntariness of an incriminating statement assessed prior to its admission into trialis what is key, and that right was not jeopardized here.
Further illustrating the justice of the result we reach is that neither the Court of Appeals, nor Williams in his appeal before that court, "show[ed] how, in the context of the trial, the alleged error actually affected the defendant's rights." McFarland, 127 Wash.2d at 333, 899 P.2d 1251. Williams did not even clearly maintain that any statements he gave Burbridge were involuntary.[3] Williams simply argued, and the Court of Appeals evidently agreed, that the "error *967 alone requires reversal and retrial, with a proper CrR 3.5 hearing." Appellant's Br. at 7. Accordingly, even had Williams demonstrated a constitutional error, he would not have met his burden of showing "actual prejudice." McFarland, 127 Wash.2d at 333, 899 P.2d 1251. Two facts are undisputed here. Not only was Williams not denied the opportunity to testify at the CrR 3.5 hearing concerning the legal admissibility of his statements, but he later did testify regarding the statements at trial. As Judge Brown stated in dissent:
The real question before us is whether Mr. Williams' substantive constitutional right was violated, not whether the exact procedural niceties directed under CrR 3.5(b) have been followed. To follow a contrary rule of precedence elevates form over substance. The procedure is not the end to be achieved, but merely an additional means for assuring substantive due process.
Williams, 91 Wash.App. at 351, 955 P.2d 865 (Brown, J., dissenting).
Williams's testimony at trial was generally consistent with his alleged custodial statements, as this excerpt from his direct examination reveals:
Q. Did the officer ask you if you sold dope
A. Yes.
Q. when he came there? What did you tell him?
A. I told him no.
Q. Was that the truth?
A. Yes.
VRP at 199. The following excerpt from the cross-examination of Williams is the only other occasion where he directly addresses his alleged custodial statements:
Q. You heard Detective Burbridge testify about your statement to him that you didn't know anything about the drug business. Is that what you said?
A. No.
Q. What did you say to Detective Burbridge?
A. Didn't say nothing because he didn't ask me anything about the drug business. He just asked me did I sell anybody any dope.
VRP at 200-01. As Judge Brown correctly noted: "Mr. Williams testified consistently with the exculpatory portion of his statement and disputes only a minor point relating to whether he had prior knowledge of the drug business, a point possibly bearing on credibility and weight, but not legal admissibility." Williams, 91 Wash.App. at 352, 955 P.2d 865 (Brown, J., dissenting).
In conclusion, we hold that the trial court's failure to give the CrR 3.5(b) advice of rights is not a constitutional error, let alone one that resulted in any actual prejudice to Williams. The assignment of error should, therefore, not have been considered for the first time on appeal.[4]See McFarland, 127 Wash.2d at 333, 899 P.2d 1251. Accordingly, the Court of Appeals is reversed, and Williams's conviction is reinstated.
GUY, C.J., and DURHAM, SMITH, JOHNSON, MADSEN, TALMADGE, SANDERS and IRELAND, JJ., concur.
NOTES
[1] Miranda v. Arizona, 684 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
[2] In light of this result, we need not reach the State's argument that failure to comply with CrR 3.5(b) may be considered harmless error. See, e.g., Arizona v. Fulminante, 499 U.S. 279, 312, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding that admission of an involuntary confession can be harmless error).
[3] Williams does not challenge the trial judge's oral ruling that Burbridge properly advised him of his rights, and that Williams's statements were the product of a voluntary waiver of his rights. "[F]indings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged...." State v. Broadaway, 133 Wash.2d 118, 131, 942 P.2d 363 (1997).
[4] Although it goes without saying, we add that our holding should not be taken as encouragement for trial courts to overlook their procedural responsibilities under the Superior Court Criminal Rules. Nor should they fail to recognize that "[a]lthough CrR 3.5 is not itself of constitutional magnitude," it was enacted to implement constitutional requirements. Wolfer, 39 Wash.App. at 291, 693 P.2d 154 (citing State v. Fanger, 34 Wash.App. 635, 637, 663 P.2d 120 (1983); Jackson, 378 U.S. 368, 84 S.Ct. 1774).