IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30220-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JONA RENEE ZEIGLER, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Jona Renee Zeigler appeals her conviction for attempting to elude a pursuing police vehicle. A CrR 3.5 hearing was held to assess the incriminating statements Ms. Zeigler made to an officer while she was in the hospital recovering from injuries she suffered during the incident. Ms. Zeigler did not appear at the hearing but was represented by her counsel. The statements were admitted. A jury found Ms. Zeigler guilty of attempting to elude. She contends that her absence from the CrR 3.5 hearing violated her right to be present at all critical stages of trial proceedings. She also alleges ineffective assistance of counsel.

We conclude that Ms. Zeigler fails to establish a manifest error and she waived her right to be present at the CrR 3.5 hearing. Her counsel was effective. Therefore, we affirm the conviction.

FACTS

Corporal Thomas Tufte approached Jona Zeigler while she was sitting in her truck in a parking lot near downtown Moses Lake. Corporal Tufte told her there was a warrant for her arrest, and that she was not free to go. After an additional conversation, Ms. Zeigler told him "'I'm not going,'" backed up her truck, and then drove out of the parking lot. Report of Proceedings (Aug. 24 & 25, 2011) (RP) at 139. Corporal Tufte got into his patrol car and followed her.

During the pursuit, Corporal Tufte activated his siren. After turning on a residential street, Ms. Zeigler attempted to get out of the moving truck. She slipped, grabbed the steering wheel and tried to get back into the truck. As the truck bounced off the curb, Ms. Zeigler lost her grip and fell. The truck continued to roll until it high centered on a chain link fence. Ms. Zeigler became pinned under the rear wheel of her vehicle.

Nearby neighbors came to the assist Corporal Tufte in getting Ms. Zeigler out from underneath the truck. After he had moved her away from the truck, Corporal Tufte found

Ms. Zeigler had a pulse but was not breathing. An ambulance took Ms. Zeigler to a nearby hospital, where Detective Kurt Adkinson interviewed her 10 days later.

The State charged Ms. Zeigler with attempting to elude and reckless endangerment and sought an exceptional sentence based on an allegation of endangerment by eluding. The State proposed to introduce statements by Ms. Zeigler allegedly made to Corporal Tufte and Detective Adkinson.

The trial court conducted a suppression hearing at which Ms. Zeigler did not appear. Defense counsel told the court that she had asked Ms. Zeigler to be present, but was prepared to proceed given the nature of the hearing. The court did not question the reason for Ms. Zeigler's absence. The hearing proceeded without Ms. Zeigler.

At the outset of the suppression hearing, defense counsel told the court that she was not challenging the admissibility of Ms. Zeigler's statements to Corporal Tufte because she did not believe that her client was in custody at the time. She offered to stipulate to the admissibility of the statements in her client's absence, but ultimately agreed to the admissibility of a transcript of the corporal's previously recorded statement. The trial court found that defense counsel had stipulated to the admissibility of Ms. Zeigler's statements to Corporal Tufte.

3

As to the statements to Detective Adkinson, Ms. Zeigler contended that she was heavily medicated at the time she was questioned by Detective Adkinson and not capable of fully understanding her statements or the *Miranda*[1] warnings. The trial court found that Ms. Zeigler's coherent and thoughtful responses to Detective Adkinson's questions demonstrated that her waiver of rights was knowing and voluntary. The court ruled that her statements to law enforcement officers were admissible.

Five days later, Ms. Zeigler appeared at a hearing on the State's motion to amend the information. The trial court did not ask her anything about her failure to appear at the suppression hearing nor did Ms. Zeigler mention her nonappearance. Ms. Zeigler also did not object when the findings of fact and conclusions of law from the suppression hearing were presented to the court on the first day of trial.

Ms. Zeigler appeared at a readiness hearing on Monday, August 22. Ms. Zeigler acknowledged that she should be ready to proceed to trial on Wednesday. The trial began as scheduled on Wednesday, August 24.

During the State's case, Corporal Tufte told the jury that Ms. Zeigler initially lied about her identity and that as she began to drive away, she said to Corporal Tufte, "'No, I'm not going.'" RP at 139. Detective Adkinson related several of Ms. Zeigler's

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

statements made during his interview with her, including her admission that she told Corporal Tufte that she "'can't go to jail'" and was "'going to try and run.'" RP at 196, 198.

Ms. Zeigler testified at trial. Her trial testimony did not address the statements made to the officers. Instead, Ms. Zeigler testified that she left the parking lot quickly. About one-half mile later, she saw the officer was following her with his lights on. She said she knew the officer was behind her but was ignoring his signal. She also said that she thought about stopping but her husband needed her care at home.

A jury found Ms. Zeigler guilty of eluding and answered "yes" on the special verdict form that Ms. Zeigler's actions of eluding threatened other persons with physical injury or harm. Ms. Zeigler appeals.

## ANALYSIS

Whether a defendant's constitutional right to be present has been violated is a question of law reviewed de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).

In reviewing a trial court's decision regarding whether a defendant is voluntarily absent from trial, we apply an abuse of discretion standard. *State v. Garza*, 150 Wn.2d 360, 365-66, 77 P.3d 347 (2003). The determination whether the defendant is voluntarily

absent from trial is dependent upon an inquiry into the facts and the totality of the circumstances, and the trial court is in a better position than the appellate court to pass on the question. *Id.* at 366. An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or is based on untenable grounds or for untenable reasons. *Id.* (quoting *State v. Woods*, 143 Wn.2d 561, 626, 23 P.3d 1046 (2001)).

*CrR 3.5 Suppression Hearing.* Generally, appellate courts will not consider an issue raised for the first time on appeal unless the issue involves a manifest error affecting a constitutional right. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) (quoting RAP 2.5(a)(3)). The burden is on the defendant to "identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's constitutional rights; it is this showing of actual prejudice that makes the error 'manifest', allowing appellate review." *Id.*

"[P]ermitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

A criminal defendant has a constitutional right to be present at all critical stages of the proceedings. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed.

6

2d 486 (1985). "The core of the constitutional right to be present is the right to be present when evidence is being presented." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). A defendant may waive his rights under the constitution, provided that such waiver is voluntary, knowing, and intelligent. *State v. Thomson*, 123 Wn.2d 877, 880, 872 P.2d 1097 (1994). Constitutional rights can be waived by conduct. *State v. Myers*, 86 Wn.2d 419, 426-27, 545 P.2d 538 (1976). Voluntarily absenting oneself from a proceeding may waive a defendant's right to be present. *See Taylor v. United States*, 414 U.S. 17, 20, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973).

Washington requires courts to conduct a hearing pursuant to CrR 3.5 to determine the admissibility of a defendant's statements to law enforcement. *State v. Williams*, 137 Wn.2d 746, 749-50, 975 P.2d 963 (1999). A CrR 3.5 hearing tests the voluntariness of an incriminating statement prior to its admission at trial. *Williams*, 137 Wn.2d at 754. Even after incriminating statements are admitted following a CrR 3.5 hearing, a defendant is not precluded from presenting evidence that casts doubt on the credibility or weight to be given to the statements. CrR 3.5(d).

"A violation of the due process right to be present is subject to harmless error analysis." *Irby*, 170 Wn.2d at 885. "'[T]he burden of proving harmlessness is on the State and it must do so beyond a reasonable doubt.'" *Id.* at 886 (quoting *State v.*

7

*Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983)).

Ms. Zeigler contends that the trial court violated her due process right to be present at all critical stages of the trial proceedings by conducting the CrR 3.5 hearing in her absence. She maintains that the evidence fails to establish a knowing, voluntary, and intelligent waiver of her rights. She also contends that this error is not harmless because she could have objected at the hearing to the testimony regarding her confessional statements.

Ms. Zeigler raises this due process challenge for the first time on appeal. Despite several other complaints, Ms. Zeigler never approached the trial court with the issue of her absence from the CrR 3.5 hearing. The preliminary question is whether Ms. Zeigler raises a manifest error affecting a constitutional right.

In this situation, Ms. Zeigler's CrR 3.5 hearing is a critical stage of the trial proceedings because it involved the taking of testimony. Detective Adkinson testified at the hearing regarding Ms. Zeigler's confessional statements, and the trial court ruled that this evidence was admissible. Ms. Zeigler's alleged error involves a constitutional right.

However, the trial court's decision to conduct the hearing without Ms. Zeigler's presence was not a manifest error. Ms. Zeigler fails to show actual prejudice from the error. Ms. Zeigler's constitutional right to have incriminating statements assessed was

8

protected despite her absence. Ms. Zeigler's attorney represented her and questioned Detective Adkinson about Ms. Zeigler's statements.

Moreover, Ms. Zeigler does not establish how the outcome of the hearing would have been different with her presence. There is no indication that the court's findings and conclusions from the hearing were erroneous or would not have been admissible at trial. Ms. Zeigler does not assign error to the trial court's findings from the CrR 3.5 hearing. Nor did Ms. Zeigler object to the entry of these findings, even though she was in the courtroom when her attorney presented the findings and conclusions from the CrR 3.5 hearing to the trial court. Ms. Zeigler did not contradict Detective Adkinson's testimony at trial. In sum, no actual prejudice resulted from Ms. Zeigler's absence because she was afforded the right to have her incriminating statements assessed, and she does not contend that the statements are false. She fails to establish a manifest error.[2]

Even if we were to decide that Ms. Zeigler raises a manifest error affecting a constitutional right, her contention still fails. Under the circumstances, the trial court did not err in conducting the CrR 3.5 hearing despite Ms. Zeigler's absence. Ms. Zeigler voluntarily waived her right to be present, as evidenced through her conduct. Ms. Zeigler knew of the hearing and failed to appear. She was not in custody. Ms. Zeigler's attorney

---

[2] *But see Irby*, 170 Wn.2d 874.

implied that Ms. Zeigler was waving her right to appear by telling the trial court that it should proceed without Ms. Zeigler, given the nature of the hearing. When Ms. Zeigler appeared at the next court proceeding, she did not offer an explanation for her absence or object to the hearing being held. Nor did she complain at trial when the findings and conclusions from the CrR 3.5 hearing were presented to the court.

There is no prejudicial effect from the trial court's failure to question Ms. Zeigler as to whether she knowingly, voluntarily, and intelligently waived her right to be present during the CrR 3.5 hearing. As we have previously stated, Ms. Zeigler's attorney made her arguments for suppression of the statements. Ms. Zeigler did not contest any of the findings or conclusions of the trial court from the CrR 3.5 hearing or contradict Detective Adkinson's testimony. Ms. Zeigler does not establish that her presence at the hearing would have changed the evidence presented at trial or the outcome of her trial.

In any case, the error was harmless. The outcome of Ms. Zeigler's trial would not have been different if she was present at the CrR 3.5 hearing. Corporal Tufte's statements were still admissible at trial. Ms. Zeigler's attorney told the court that she did not plan on contesting the statements because the statements were not made while Ms. Zeigler was in custody. Corporal Tufte's statements established that Ms. Zeigler knew she was not free to leave when she exited the parking lot.

10

As for the statements made to Detective Adkinson, even if Ms. Zeigler's presence would have somehow convinced the court to suppress these statements, there was still ample evidence to support the verdict that Ms. Zeigler attempted to evade the police. In addition to Corporal Tufte's testimony, Ms. Zeigler testified that she was aware that a police car was following her and that she did not stop. The videotape of the police pursuit also established that Ms. Zeigler failed to stop for police. Ms. Zeigler's absence at the suppression hearing was a harmless error beyond a reasonable doubt.

We decline to review Ms. Zeigler's alleged error for the first time on appeal because she fails to establish a manifest error affecting a constitutional right. Even if we were to address Ms. Zeigler's contention that her constitutional right to be present at all crucial stages of trial proceedings was violated, her contention fails. Ms. Zeigler waived her right to be present at the proceeding. Any alleged error is not prejudicial and is harmless.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

*Effectiveness of Counsel.* In her statement of additional grounds for review (SAG), Ms. Zeigler claims ineffective assistance of counsel. Ms. Zeigler contends that defense counsel's performance was defective when counsel (1) admitted in closing arguments that Ms. Zeigler was eluding, (2) told Ms. Zeigler that she did not need to be

11

present during the CrR 3.5 hearing, and (3) misled Ms. Zeigler about the date of the trial, causing Ms. Zeigler to rush home from an out-of-town job opportunity.

To establish ineffective assistance of counsel, two prongs need to be satisfied: (1) counsel's conduct must be deficient, and (2) counsel's acts must have prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[S]crutiny of counsel's performance must be highly deferential." *Id.* at 689.

Where the evidence of guilt on a particular count is overwhelming and there is no reason to suppose that any juror doubts it, conceding guilt on that count in closing can be a sound trial tactic. *State v. Silva*, 106 Wn. App. 586, 596, 24 P.3d 477 (2001) (quoting *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)). This approach may help win the jury's confidence, preserve the defendant's credibility, and lead the jury toward leniency by conceding that the defendant is guilty of a lesser charge. *See id.* at n.37. If the concession is a matter of trial strategy or tactics, it is not ineffective representation. *Id.* at 599.

We conclude that Ms. Zeigler fails to establish that defense counsel was ineffective. Defense counsel's statement during closing argument was not unreasonable. Defense counsel could not deny the allegation of attempting to elude because Ms. Zeigler admitted to all of the elements of the offense in her testimony. Also, the videotape

evidence clearly showed Ms. Zeigler's failure to stop. At this point, it is reasonable to conclude that defense counsel's strategy was to minimize the impact of the evidence by admitting that the evidence established the offense of eluding, but denying that the evidence supported the recklessness charge or the special allegation of endangerment. This strategy of focusing on charges where reasonable doubt could be established was a sound trial tactic. The strategy was effective, as Ms. Zeigler was found not guilty of reckless endangerment.

As for the CrR 3.5 hearing, the record does not establish that defense counsel advised Ms. Zeigler that she did not need to attend. However, even if this was true, defense counsel did not act unreasonably in advising Ms. Zeigler. Ms. Zeigler's presence would not have changed the outcome of the proceeding. The testimony would still have been admitted. The trial court recognized the clear admissibility of the statements. Defense counsel was reasonable in telling Ms. Zeigler that her presence was not necessary. There is no prejudice to Ms. Zeigler.

The alleged confusion over the trial date did not amount to ineffective assistance. The trial court addressed this issue and recognized that it could not confirm that defense counsel advised Ms. Zeigler of an incorrect trial date. Even so, the court correctly found that the action was not prejudicial to Ms. Zeigler. The court found that Ms. Zeigler

appeared at the pretrial hearing, was advised of the trial date, and had an obligation to appear on that date. Defense counsel's failure to confer with Ms. Zeigler immediately before trial does not establish ineffective assistance of counsel. Defense counsel presented a coherent argument and was well prepared. Ms. Zeigler was not prejudiced by the alleged error.

Defense counsel effectively represented Ms. Zeigler.

*Jury Instructions.* Next, Ms. Zeigler contends that the jury confused the instruction on reckless endangerment with the instruction on the special allegation of endangerment on the eluding charge. She contends that the instructions appear to charge her twice for the same offense and the jury's confusion may have resulted in Ms. Zeigler being convicted of the wrong offense. Ms. Zeigler did not object to the jury instructions at trial.

Generally, a defendant's failure to object to jury instructions at trial results in a waiver of the right to challenge the instruction on appeal. However, an error may be raised for the first time on appeal if it "'invades a fundamental right of the accused.'" *State v. Levy*, 156 Wn.2d 709, 719, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). Also, a double jeopardy violation is an error of constitutional magnitude and can be raised for the first time on appeal. *State v. Mutch*,

171 Wn.2d 646, 661, 254 P.3d 803 (2011). The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. U.S. CONST. amend. V; CONST. art. I, § 9.

Ms. Zeigler failed to object to the jury instructions at trial. Thus, she waived her right to challenge the jury instructions on appeal. Admittedly, Ms. Zeigler alludes to a double jeopardy violation in her challenge to the jury instructions. However, no double jeopardy violation occurred because she was not convicted of both of the separate charges. The jury answered affirmatively on the special endangerment allegation, but found Ms. Zeigler not guilty of the count of reckless endangerment. Thus, she did not receive multiple punishments for the same offense.

In her last SAG issue, Ms. Zeigler suggests that she cannot be found guilty of eluding if the act takes place on private property. Ms. Zeigler does not cite to legal authority to support this position. In any case, the eluding statute does not require the offense to occur on public highways.

Ms. Zeigler waived her right to challenge the jury instructions on appeal.

15

No. 30220-2-III
*State v. Zeigler*

We affirm the conviction.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____        _____
Korsmo, C.J.                             Siddoway, J.