IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33099-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD GLENN SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — After being arrested for theft, appellant Donald Smith uttered incriminating statements to two law enforcement officers. Upon Smith's talking to the first officer, the officer gave Smith the *Miranda* warnings. Smith spoke to the second officer without renewed warnings. The trial court conducted a CrR 3.5 hearing to determine the admissibility of Smith's comments to the first officer and ruled the statements admissible. The court did not address the admissibility of the comments to the second officer. Both officers testified at trial to the remarks made by Donald Smith. Without having objected at trial to the testimony of the second officer, Smith assigns error on appeal to the trial court's failure to conduct a CrR 3.5 hearing before allowing

the second officer to testify to comments Smith uttered. We discern no manifest

constitutional error and affirm Smith's convictions for burglary and theft.

## FACTS

This statement of facts derives from both trial testimony and testimony during a

CrR 3.5 motion by the State to introduce statements uttered by defendant Donald Smith

to arresting officers. We begin with trial testimony.

On March 28, 2014, Derik Sterling went to his grandfather's home, at 6670 Mae

Valley Road N.E., Moses Lake, to move insulation into the home's garage because of

rain. The home lies in a rural area. When he arrived, Sterling spotted an unfamiliar car,

with a woman therein, parked between the house and garage. He approached the vehicle

and asked the woman about her presence. He then saw a male in front of the garage. The

male was defendant Donald Smith and the woman in the car was Marian Benavidez.

Sterling did not know either Smith or Benavidez and had not given them permission to

enter the garage.

Derik Sterling called the police. While he was on the phone, Donald Smith

walked past him and left the property. Smith proceeded to walk or run down Mae Valley

Road.

Grant County Sheriff Deputy Jacob Fisher arrived at the Mae Valley Road home.

As he neared the home, Deputy Fisher espied Donald Smith running across a field to the

south of the residence. Smith attempted to hide behind a wood pile. Fisher walked to

Smith's location and arrested him.

We move to testimony elicited during the CrR 3.5 hearing. As Deputy Jacob Fisher and Donald Smith walked to the house, Smith volunteered information. Deputy Fisher momentarily hushed Smith and read Smith the *Miranda* warnings. Thereafter Smith admitted entering the garage and taking property. He told Fisher that Derik Sterling granted him permission to enter the garage.

We return to trial testimony. Grant County Sheriff Deputy Patrick Pitt also responded to Derik Sterling's call for assistance. Donald Smith told Deputy Pitt that he did not know Sterling, that a woman named Celeste granted him permission to enter the garage, and that he moved items from the garage. Smith, however, was unable to identify an address or phone number for Celeste. Smith also told Pitt that he ran from the residence because he did not like police. The record does not show that Pitt also read Smith *Miranda* warnings.

After the arrest of Donald Smith, Derek Sterling surveyed the car that Smith abandoned. The car contained a DVD player, skill saw, power drill, sawzall, and building materials previously stored in the property's garage and owned by Sterling. Sterling also discovered that someone shattered the doorknob to open the garage door.

## PROCEDURE

The State of Washington charged Donald Smith with second degree burglary and third degree theft. Before trial, the trial court conducted a CrR 3.5 hearing to determine

3

the admissibility of Donald Smith's comments to Deputy Jacob Fisher. The court ruled the statements admissible. The trial court did not address the admissibility of Smith's statements to Deputy Patrick Pitt.

A State's original list of witnesses identified Deputy Jacob Fisher as a law enforcement officer to whom Donald Smith uttered statements. One month later, the State amended its witness list to include Deputy Patrick Pitt as a witness and to declare that Pitt would testify to statements from Donald Smith. Trial proceeded more than three months after the State filed its amended witness list.

During trial, Donald Smith registered no objection to Deputy Patrick Pitt testifying to remarks Smith uttered to Pitt. Smith testified at trial that he never told Deputy Pitt that Celeste granted him permission to enter the garage or that he entered the garage. Smith instead testified that Peggy Sangster gave him permission on behalf of Cecily McFarland and Derik Sterling to enter the property in order to help Peggy move some of her possessions from the property. The jury convicted Donald Smith of both charges.

Donald Smith filed a motion for a new trial, by which motion he first objected to the admissibility of his remarks made to Deputy Patrick Pitt. During argument on the motion, the State asserted the trial court could peruse the record to determine if the statements to Pitt were voluntary, and, if the record did not suffice, the trial court could conduct a post-trial CrR 3.5 hearing. The trial court agreed and offered to hold a CrR 3.5

4

hearing to assess the voluntary nature of Smith's comments to Deputy Pitt. Smith

declined the hearing, and the trial court denied the motion for a new trial.

## LAW AND ANALYSIS

Donald Smith seeks a new trial because the State introduced his incriminating

comments spoken to Deputy Patrick Pitt without holding a CrR 3.5 hearing to determine

if the statements were voluntary. The State does not dispute that the trial court should

have determined the voluntariness of the statements at a CrR 3.5 hearing. Instead, the

State argues that Smith waived the assignment of error, invited the error, the error is not

reviewable, and the error was harmless because the statements were demonstrably

voluntary.

Donald Smith did not object to Deputy Patrick Pitt's testimony until he submitted

a motion for a new trial weeks after the trial concluded. Therefore, we must determine

whether to review the failure to hold a CrR 3.5 hearing when the defendant did not insist

on a pretrial hearing and did not object to the testimony at trial.

RAP 2.5(a) formalizes a fundamental principle of appellate review. The first

sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court
> may refuse to review any claim of error which was not raised in the trial
> court.

No procedural principle is more familiar than that a constitutional right, or a right of any

other sort, may be forfeited in criminal cases by the failure to make timely assertion of

5

the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Donald Smith raised the failure of a CrR 3.5 hearing with respect to statements voiced to Patrick Pitts in a motion for new trial, rather than for the first time on appeal. Nevertheless, raising an error for the first time in a motion for new trial is tantamount to asserting the error for the first time on appeal. We do not consider arguments made on the first occasion in a motion for new trial, motion for reconsideration, or on appeal. *Trueax v. Ernst Home Ctr., Inc.*, 124 Wn.2d 334, 340, 878 P.2d 1208 (1994); *Lee & Eastes, Inc. v. Continental Carriers, LTD*, 44 Wn.2d 28, 35, 265 P.2d 257 (1953); *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 427, 40 P.3d 1206 (2002). A new claim of error brought forward for the purpose of reversing a judgment is too late if made for the first time on the motion for new trial. *Puget Sound Marina, Inc. v. Jorgensen*, 3 Wn. App. 476, 480, 475 P.2d 919 (1970). The same considerations support denying review of issues raised for the first time on appeal as with issues asserted for the first time after completion of trial.

Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below

6

because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50 (2013); *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1998).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt.

7

6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Washington decisions and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2010); *State v. Scott*, 110 Wn.2d at 688; *State v. Lynn*, 67 Wn. App. at 346. A third and important formulation for purposes of this appeal is the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

We employ the first definition of manifest constitutional error and decline to review Donald Smith's assignment of error for three reasons. First, Smith presents no case that holds one has a constitutional right to a CrR 3.5 hearing before trial. Second,

8

facts support a conclusion that Smith waived any right to a hearing. Third, under the peculiar facts of the case, the State has a reasonable argument that the *Miranda* warnings given by Deputy Jacob Fisher sufficed for any incriminating statements later given to Deputy Patrick Pitts.

CrR 3.5 addresses "confession procedures" and reads in relevant part:

> **(a) Requirement for and Time of Hearing.** When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible. A court reporter or a court approved electronic recording device shall record the evidence adduced at this hearing.
>
> . . . .
>
> **(c) Duty of Court to Make a Record.** After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor.

Criminal Rule 3.5 is Washington's confession procedure rule. The rule provides a uniform procedure for the admission of voluntary confessions, as well as other custodial statements, in a fashion that will prevent the jury from hearing an involuntary confession. *State v. Myers*, 86 Wn.2d 419, 425, 545 P.2d 538 (1976). The rule's significant impact is that the trial judge resolves the issue of voluntariness in the absence of the jury and thus obviates the due process problems that would arise where the jury hears an involuntary confession. *State v. Lopez*, 67 Wn.2d 185, 188, 406 P.2d 941 (1965).

Although CrR 3.5 imposes, by rule, the requirement of a pretrial hearing to determine the voluntariness of incriminating statements, Donald Smith forwards no

9

decision that determines compliance with the rule is constitutionally mandated. A court rule does not necessarily create a constitutional right. Washington courts have recognized that CrR 3.5 is not of constitutional magnitude. *State v. Wolfer*, 39 Wn. App. 287, 291, 693 P.2d 154 (1984), *abrogated on other grounds by State v. Heritage*, 152 Wn.2d 210, 95 P.3d 345 (2004); *State v. Fanger*, 34 Wn. App. 635, 637, 663 P.2d 120 (1983).

Donald Smith contends that *State v. Lopez*, 67 Wn.2d at 188-89 (1965), and *State v. Myers*, 86 Wn.2d at 425-26 (1976) stand for the proposition that due process demands a pretrial hearing. Br. of Appellant at 5-6. Neither case supports this proposition. In *State v. Lopez*, the Supreme Court expressly ruled that due process was not violated by the failure of the trial court to conduct a pretrial hearing as to whether the confession was voluntarily given. The Supreme Court affirmed the conviction despite the State's use of a confession without any hearing.

In *State v. Myers*, the trial court, sitting without a jury, did not conduct a formal confession hearing. The question of the voluntariness of defendants' statements arose during the trial, however, and the trial court advised both defendants of their right to a hearing. Both then indicated a desire to defer any testimony about the voluntariness of their custodial statements until the presentation of their cases. The question was never readdressed and the trial court issued no formal written findings concerning the

10

admissibility of the statements. On appeal, the Supreme Court held that the defendants knowingly, intelligently, and voluntarily waived their right to a voluntariness hearing.

On a related basis, any error below did not constitute manifest constitutional error because facts support a waiver of any right to a pretrial hearing. Although Washington courts declare CrR 3.5 to be mandatory, *State v. Myers*, 86 Wn.2d at 425 (1976), its mandatory nature is limited. Under proper circumstances the right to a voluntariness hearing and the other requirements of the rule, such as the formal entry of written findings, can be waived. *State v. Myers*, 86 Wn.2d at 426; *State v. Woods*, 3 Wn. App. 691, 697, 477 P.2d 182 (1970). In addition, the trial court may conduct the required voluntariness hearing in conjunction with the trial itself rather than before commencement of the trial. *State v. Haverty*, 3 Wn. App. 495, 498, 475 P.2d 887 (1970).

Donald Smith did not ask for a pretrial hearing to determine the voluntary nature of his incriminating remarks to Deputy Patrick Pitts. He did not object to Pitts' testimony during trial. In *State v. Myers*, already discussed, the Supreme Court held the defendants waived their right to a pretrial hearing by failing to insist on a hearing until on appeal. In *State v. Fanger*, 34 Wn. App. at 638 (1983), this court held that the defendant impliedly waived his rights under CrR 3.5 by failing at trial to object to the officers' testimony.

One more reason exists to conclude that facts support a waiver of the right to a pretrial CrR 3.5 hearing. When Donald Smith moved for a new trial, the trial court offered Smith the opportunity for a posttrial hearing on the voluntariness of his

11

confession. Smith shunned the request. In *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), the Supreme Court held there to be error for the trial court to fail to conduct a pretrial hearing. The Court did not reverse the conviction, but remanded the case to the state court to conduct a post-appeal hearing on the voluntariness of the statement.

We note that, before Donald Smith uttered incriminating statements to Deputy Patrick Pitts, Deputy Jacob Fisher delivered *Miranda* warnings to Smith and Smith bespoke incriminating remarks to Fisher. The comments to Pitt were contemporaneous with the remarks to Fisher. Smith does not forward any case law that would demand Pitt to also give the *Miranda* warnings under these circumstances. For this additional reason, we discern no manifest constitutional error posed by Smith's appeal.

Donald Smith contends the State engaged in gamesmanship when it omitted Deputy Patrick Pitts from its first witness list. We detect no gamesmanship when the State added Pitts to the list of witnesses more than three months before trial.

## CONCLUSION

We affirm Donald Smith's convictions for second degree burglary and third degree theft.

12

No. 33099-1-III
*State v. Smith*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

13